**IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT, IN AND
FOR WALTON COUNTY, FLORIDA**

**REECE KNOWLTON,**

      **Plaintiff,**

**v.**

**WALTON COUNTY SCHOOL
BOARD,**

      **Defendant,**

_____/

**CASE NO.: 24-CA-
FLA BAR NO.: 0739685**

## COMPLAINT

Plaintiff, REECE KNOWLTON, hereby sues Defendant, WALTON COUNTY SCHOOL

BOARD, and alleges:

## NATURE OF THE ACTION

1.      This is a civil action seeking monetary damages, declaratory judgment, and legal,

equitable, and injunctive relief against Defendant. This is an action brought under the common

law of the State of Florida, Title IX, 20 U.S.C. §§1681, et seq., the Florida Education Equity Act

pursuant to § 1000.05, Florida Statutes, and the Florida Civil Rights Act, codified at Chapter 760,

Florida Statutes.

2.      This is an action involving claims which are, individually, in excess of Fifty

Thousand Dollars ($50,000.00), exclusive of costs and interest.

## PARTIES

3.      At all times pertinent hereto, Plaintiff, REECE KNOWLTON (hereinafter

"Plaintiff Knowlton"), has been a resident of the State of Florida. Plaintiff is a member of a

protected class because of her gender. She is *sui juris*.

<div style="border:1px solid black; display:inline-block; padding:4px; text-align:center;">**EXHIBIT
A**</div>

1

4.     At all times pertinent hereto, Defendant, WALTON COUNTY SCHOOL BOARD, has been organized and conducting business under the laws of the State of Florida and has been operating South Walton High (SWHS) and Emeral Coast Middle School (ECMS) under the laws of the State of Florida.

## CONDITIONS PRECEDENT

5.     Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.     Plaintiff was a student at Defendant's campus, SWHS, and began her schooling there in August 2020.

7.     She was a stellar student while enrolled at SWHS who consistently received AB honor roll. Plaintiff was heavily involved in the Defendant's extracurricular activities, including specifically but not limited to, Student Government Association, Fellowship of Christian Athletes, and the Barbara Bush Foundation. Additionally, Plaintiff was a student athlete for the school's cross-country and track team, receiving a track state championship title in 2021 and four state track medals in 2022.

8.     The disparate treatment and subsequent retaliation that Plaintiff suffered came at the hands of specifically but not limited to SWHS/ ECMS Coach Willie Parker, SWHS Principal Alexis Tibbets, SWHS Athletic Director Phil Tisa, SWHS Department Superintendent and Title IX Coordinator Jennifer Hawthorne, SWHS Vice Principal Nina Bourthwick, ECMS, Principle Todd Drake, ECMS Vice Principal Nancy Parker, ECMS Assistant Coach Michele Petty, ECMS, Walton County Investigator Josh Harrison, and SWHS SRO Officer Nick McMillian.

9.	At the time of the disparate treatment and actions adversely affecting Plaintiff, Parker was concurrently employed as the Defendant's Physical Education Coach at ECMS and served as the track and cross-country coach for SWHS.

10.	Parker's spouse, Nancy Parker, holds the position of Assistant Principal at ECMS and is employed by the Defendant. Nancy Parker frequently presented herself as the person in charge during Todd Drake's absence, particularly in instances where Parker failed to fulfill his duties as coach.

11.	Complaints directed against Parker were routed to Drake and/or Nancy Parker. Consequently, the Defendant lacked a proper chain of command for initiating any disciplinary measures against Parker and failed to uphold its nepotism policy.

12.	Additionally, track and cross-country practices for SWHS were held at ECMS.

13.	Beginning on or around Spring 2021, Plaintiff, along with her female teammates, minors D.L. and C.G., experienced harassment and bullying from Parker, while practicing, traveling to track and cross country meets, and conducting any track-related activities. This persistent behavior disrupted the learning environment, subjecting each of them to mistreatment based on their gender by their track coach, Parker.

14.	By way of example, Parker repeatedly made inappropriate references to the students' sexuality as well as speaking to the female athletes, to include Plaintiff in a derogatory, demeaning, and abusive manner, often with use of profanity.

15.	Following an incident in which Parker voiced his disapproval or opinion of C.G. laying down asleep, while riding the bus, with her head in D.L.'s lap, Parker tasked the female athletes, to include Plaintiff, with an intense practice assignment.

16. However, Parker did not exhibit similar behavior towards male athletes in the same position on the bus, nor did he demonstrate similar behavior towards minor B.T., a male, and minor E.T., a female, both former track athletes, in a comparable situation on a prior occasion. It appeared to bother Parker that C.G.'s head was in another female's lap.

17. On or around August 26, 2022, Parker advised Plaintiff to stay away from the above-mentioned female athletes (D.L. and C.G.) and stated that they are bad influences. Notably, these female students were suspected of having a homosexual relationship by Parker, which was false. Plaintiff was deemed guilty by association in Parker's perception due to her friendship with these fine students.

18. On the following day, Plaintiff, D.L. and C.G. left practice due to Parker's cruel and excessive practice assignment, an 11-mile run, which was tasked in continuing disparate treatment based on their gender and sexual orientation. Additionally, on that day, Parker cussed at them, explicitly telling Plaintiff that she "was not shit," "never going to be anything," and that Plaintiff "was never going to go to college" or something similar to. Subsequently, the trio left practice and notified their parents and the administration of Parker's actions.

19. Thereafter, Parker publicly made comments such as he did not need or want them, referring to Plaintiff, D.L. and C.G., that he was going to send them home, and that he wanted them to quit. Plaintiff was kicked off of the cross-county track team shortly thereafter.

20. Then, Parker began making inappropriate comments to students and/or athletes as it related to Plaintiff.

21. By way of example, Parker instructed student minor M.M. to distance himself from Plaintiff, citing her as "negative," and also advised M.M. to refrain from having lunch with Plaintiff.

4

22.     By way of further example, Parker advised minor H.R. that Plaintiff was a liar.

23.     During this period, Parker engaged in multiple conversations with various team members, advising student athletes that Plaintiff "wasn't needed," asserting that the team would be "better off without her," and predicting that Plaintiff would regret her decision to leave the team and would eventually rejoin.

24.     During Plaintiff's tenure participating in track and cross country, Parker publicly criticized her multiple times, whenever he deemed her performance, whether in track or personal matters, to be inadequate. Furthermore, he employed intimidation tactics, including speaking loudly in Plaintiff's face while poking her chest, and would often bring up vulnerable incidents at a later time.

25.     On one occasion, Parker advised Plaintiff to be a "b*tch" to the others because she was better than them.

26.     On other occasions, Parker made comments like, "I can't believe you would walk out of the house in that," and "you are too skinny for those jeans," directed only at female athletes, to include Plaintiff. Additionally, Parker would shame female athletes about dating, while praising male athletes on the same subject.

27.     Contrary to the treatment female athletes received, male athletes were not similarly criticized or spoken to with disparaging comments. Instead, Parker entertained their discriminatory and inappropriate comments.

28.     On occasion, one male athlete told another male athlete that, "…only a b*tch wore sketchers,…fag." As a response, Parker stated that the male athlete was "kind of right."

29.     However, this was not Parker's first time exhibiting such discriminatory behavior towards female students and/or athletes under his supervision. Based on information and belief,

5

Parker's behavior, distasteful references and advice have resulted in several former female students and/or athletes abruptly quitting the track and cross-country sport or feeling uncomfortable under Parker's supervision in prior years.

30.     By way of example, in or around April 2017, a complaint was filed against Parker which was focused on female middle school track athletes, at the Emerald Coast Middle School, wearing what he considered an excessive amount of makeup and hanging around the wrong people, among other things. Parker was accused of physically assaulting at least one of the female athletes by way of hitting her on the back side of her head. These claims were later settled in an informal resolution. However, the verbiage of the complaint was similar in nature to the claims of Plaintiff, D.L. and C.G against Parker.

31.     Parker faced discipline in or around 2004, while living in a different county, when he knowingly allowed ineligible students to participate in track events. His contract was not renewed for the following year as he was suspended by the Florida High School Athletic Association (FHSAA) for one year. Nonetheless, Defendant hired and still allowed Parker to be employed within the same capacity thereafter.

32.     During Plaintiff's time participating in Defendant's cross-country track team, Defendant failed to arrange for a female staff member and/or volunteer to be present at track meets, including meets with overnight stays.

33.     Plaintiff's mother, who volunteered as an assistant for track practices, was never staffed or required by Defendant to attend any track meet. As a result, the female track team was left vulnerable to Parker's verbal attacks, and without advocacy or proper supervision.

34.     During Mrs. Slatton's tenure volunteering with the Defendant's cross-country and track team, she witnessed multiple instances of questionable and inappropriate behavior by Parker.

35.     For instance, in or around March 2023, Mrs. Slatton observed a physical altercation between two female athletes, one aged 18 and the other 15. Notably, the 15-year-old identified as homosexual, and the 18-year-old acted as the aggressor. Parker told the Defendant he removed the 18-year-old from being captain, but she was never captain. Parker made this statement in an attempt to avoid implementing corrective action where necessary. Mrs. Slatton was never interviewed regarding this incident.

36.     On or around September 6, 2022, Plaintiff and her parents, Mr. and Mrs. Slatton, scheduled a meeting with Principal Tibbets to document the ongoing discriminatory and seemingly targeted behavior by Parker to Plaintiff, and to seek corrective action, to include requesting a new female coach. However, their efforts proved unsuccessful and fell on deaf ears.

37.     On September 12, 2022, Parker was suspended from his position as track coach with South Walton High School. However, he was still actively working as the Physical Education Coach at the Emerald Coast Middle School, which allowed him to continue being involved with students of Defendant, to include current and former student athletes. Furthermore, Parker continued to be involved with Defendant's athletics at SWHS as well as at other campuses without intervention.

38.     On or around September 14, 2022, Plaintiff filed a Title IX complaint naming Parker, which alleged gender discrimination and retaliation, with included claims of sexual harassment.

39.     Initially, Plaintiff sought to address her concerns within a toxic environment complaint; however, the Defendant reclassified it as a Title IX complaint. Nonetheless, the complaint was never fully investigated.

40.     D.L. and C.G. additionally filed separate Title IX complaints.

41.     The removal of Parker from his coaching position incited outrage among fellow students, athletes, and parents of students, all of whom engaged in different forms of bullying against Plaintiff in part due to Parker's involvement.

42.     As a direct response, Plaintiff was ostracized and shunned by former track athlete friends, and the victim of harassment based on gender, rumors, and innuendo.

43.     By way of example, teammates and fellow students falsely accused Plaintiff of alleging sexual assault against Parker. Parker's Assistant, Michelle Petty, sent out inflammatory emails and made Facebook posts in support of Parker's return. On the day of the team cross-county state meet, students and/or parents created shirts bearing the phrase "Free Willie", symbolizing Parker's reinstatement as track coach, and "11 miles too much," alluding to Plaintiff, D.L. and C.G., who each departed practice due to Parker's excessive training demands on or around August 29, 2022.

44.     Subsequently, these shirts became a regular sight during school hours, worn by athletes and other students unrelated to the track and cross-country team, who purchased them in the Defendant's parking lot. These students, who also attended Plaintiff's classes, took advantage of these opportunities to harass her.

45.     Plaintiff notified the Defendant about the apparent targeted behavior and retaliation, yet the Defendant took no action to address the students' conduct and attire.

46.     Notably, minor C.C., a male track athlete who did not compete in the state meet and arranged separate transportation to the event, bought a "Free Willy" t-shirt and was permitted to use the transportation provided by the Defendant to return home from the meet but not Plaintiff.

47.     The present coaches were instructed by Defendant to not intervene.

48.     Following a discussion with the coaches during which Plaintiff was informed of the Defendant's intention not to intervene, Mrs. and Mr. Slatton made arrangements for Plaintiff and other targeted students, to commute home with them instead of using the transportation provided by the Defendant.

49.     Several students riding on transportation provided by the Defendant, attempted to bully, by way of video call, Plaintiff and the targeted students accompanying her during the commute home.

50.     Despite the Plaintiff's numerous attempts to report the students and/or athletes who were engaging in bullying and targeting her, the Defendant failed to take any corrective action. These athletes continued to participate in every track meet without facing any disciplinary measures.

51.     Once put on notice of Plaintiff's complaint allegations, Defendant neglected to carry out a comprehensive investigation. By way of example, numerous witnesses, identified by Plaintiff, D.L. and C.G., were not interviewed before the final decision was made. By way of further example, Defendant neglected to conduct a comprehensive investigation, evidenced by its failure to confiscate Parker's phone to confirm or refute the Plaintiff's assertions that Parker maintained contact with track athletes following his suspension imposed during the investigation,

even after Parker's admitted continuing contact. Additionally, Defendant did not conduct student interviews until on or around October 6, 2022, more than six weeks after the initial report.

52. In retaliation for Plaintiff and her parents reporting of Parker's behavior and/or in continued disparate treatment based on Plaintiff's gender, Parker scheduled a late leave time for Plaintiff's pre-arranged track meet. This would have resulted in the female athletes having less time to prepare for the race or missing their race entirely, had Mr. and Mrs. Slatton not intervened by way of putting Defendant on notice of Parker's actions. Notably, the males' race started after the females' and therefore would have allowed male athletes ample time to prepare and compete. Furthermore, the coaches' meeting was earlier than both and would have been missed completely.

53. At the subsequent scheduled meet, Parker made a last-minute alteration to the cross-country running course without informing the female athletes. Unlike the female athletes, the male cross-country runners were not equally affected, as they ran after the female athletes and had the opportunity to familiarize themselves with the course before the race began.

54. Additionally, in October 2022, Parker disseminated incorrect information about the cancellation of a track meet to at least two schools, leading to diminished participation from opposing schools. Parker could communicate on behalf of the team because the Defendant did not promptly remove his contact information from the FHSAA website.

55. Each of the abovementioned instances were reported to Defendant with no corrective action taken.

56. On or around October 19, 2022, Plaintiff's father, James Slatton, modified Plaintiff's existing complaint to include toxic learning environment, bullying, harassment, and lack of institutional contact.

57.     Mr. Slatton made this modification because he observed minimal to no investigation into the previous complaint submission and believed it was the only recourse to compel the Defendant to properly investigate the claims.

58.     In or around this time, Mrs. Slatton reported to the Defendant her suspicion that Parker was mishandling and commingling funds allocated for the track and cross-country teams across both SWHS and ECMS. Mrs. Slatton specifically asked for Defendant to audit these funds. Despite this, her concerns were ignored, and the Defendant failed to conduct an investigation. There was no mention of this included in the Title IX investigation.

59.     On or around November 15, 2022, Plaintiff submitted a bullying complaint form that had been provided only recently, despite the Defendant being cognizant of the mistreatment endured by Plaintiff for the preceding two months. This complaint was against several male track athletes, some of whom had previous actions that warranted disciplinary action, yet the Defendant failed to take appropriate action.

60.     In fear of additional retaliatory actions brought by Parker, and due to the legitimate violations resulting from lack of administrative control, Mrs. Slatton filed a complaint with the Florida High School Athletic Association (FHSAA) which allegations included but are not limited to: Parker using different names for running athletes, failure to comply with health protocols regarding concussions, neglecting to provide ice baths during periods of high heat, allowing participation of individuals not medically cleared or academically eligible, altering athletic records, conducting unauthorized practices during restricted periods, merging middle school and high school practices, and having middle schoolers participate in high school events under a non-existent JV team. This was investigated and the findings were thereafter confirmed. As a result, Parker was effectively suspended and deemed an ineligible coach from South Walton High School.

However, Parker continued to work in close proximity to the middle school athletes of ECMS. Additionally, Parker persistently disrupted SWHS's track practices by running a high school club team at ECMS, which clashed with the scheduled track practices.

61.     The ruling resulting from this complaint suspended nine students for one year and imposed a fine of $12,000 on the Defendant. However, this decision was appealed a few days later, leading to the removal of the students' suspensions.

62.     Parker continued to violate FHSAA rules by merging high school athletes with middle school athletes.

63.     Regrettably, defendant subsequently reinstated Parker to his position as the ECMS track and cross-country coach, following the conclusion of Plaintiff's Title IX complaint.

64.     On January 23, 2023, while working with Parker at ECMS, Michelle Petty created an online Change.org petition titled, "Reinstate Coach Parker as SWHS track and field coach" during company hours using company equipment with the below caption, "…His investigation pertains to XC only." This petition is still viewable today.

65.     As a result, Plaintiff filed a bullying complaint against Michelle Petty, alleging harassment, manipulation of the facts, inciting violence, and harm of a minor. This claim was investigated by Walton County Safety and Compliance Officer Danny Graham and confirmed thereafter. Once confronted about the incident, Michelle Petty resigned with full pay rather than answering any questions in the investigation.

66.     Defendant filed this complaint under a safety report, thereby allowing Petty the opportunity to work in close proximity to children even after the claims were substantiated.

67.     Notably, Petty was awarded a bonus check after her resignation.

68.     The Defendant persistently declined to accommodate or take into account the requests made by the Plaintiff and her parents to remedy an obviously discriminatory and retaliatory environment.

69.     By way of example, Mr. and Mrs. Slatton asked that Plaintiff be permitted to practice independently after Parker was removed from his coaching position, partly because of the ostracism she faced for being involved in his removal. However, this reasonable request was denied.

70.     Subsequently, Mr. and Mrs. Slatton asked if they could drive Plaintiff to her track meets to spare her from riding the bus with students who were actively bullying her. Despite being a reasonable request, it was denied.

71.     Because Plaintiff was enrolled in Advanced Placement (AP) classes at the time, Mr. and Mrs. Slatton asked for an exemption allowing her to complete the academic semester at SWHS while participating in cross-country at another school. However, this request was also denied by the Defendant.

72.     In an attempt to make up for its negligence regarding the unresolved bullying and trauma, Plaintiff received two Hope Scholarships, which allow a student to change schools to a different county, with Defendant either paying the cost of transportation or paying the cost of tuition for private school. Nonetheless, the bullying persisted, underscoring the inadequacy of the Defendant's efforts to resolve the situation.

73.     Mr. and Mrs. Slatton were ultimately compelled to transfer Plaintiff to a different school within the county around December 2022. This decision was influenced by Investigator Josh Harrison's advisement that if Plaintiff were to leave the county, her complaint would be dismissed, and also partly due to the detrimental effects of Parker's behavior. As a result of this

untimely transfer, Plaintiff Knowlton missed out on fundamental high school activities, such as Prom, lost half of her AP credits, and was forced to forego attendance to her social clubs and Defendant's student body government association.

74. Furthermore, Plaintiff's younger brother, minor J.K., had to transfer to a different school in May 2022 out of concern for potential retaliation from students and parents who backed Parker and were still advocating for his reinstatement the following year.

75. Defendant has failed to uphold the conditions outlined in the Hope scholarship. Plaintiff Knowlton transferred to Seacoast Collegiate High School, which the Defendant claimed was situated outside of county lines. However, it should be noted that while Plaintiff attended classes and participated in the cross-country athletic program within Okaloosa County, the school's collegiate office was located in Walton County.

76. Nonetheless, no accommodation or exception was provided.

77. Since the onset of Plaintiff's enrollment at Seacoast, she consistently faced harassment, which has transcended the jurisdictional boundaries of the Defendant's county, as a result of Parker's removal as track and cross-country coach. Consequently, Plaintiff Knowlton found it necessary to submit an additional bullying complaint against Seacoast students who wore the "Free Willie" shirts to a fundraising event where Plaintiff was mandated to work.

78. The Defendant was made aware of these ongoing retaliatory effects; however, excuses were provided to absolve the Defendant of liability.

79. In approximately March 2023, the Plaintiffs received the final draft of the investigative report concerning Parker. They were allotted 10 days to provide final comments, a period which was not respected as the report was submitted without their approval.

80.    The findings of this report confirmed the Defendant's failure to conduct a thorough investigation. However, because of the flawed nature of the investigation, no determination could be reached, and as a result, no effective corrective action was taken.

81.    Thereafter, Nancy Parker made assertions similar to, "[Parker] has been cleared of all the allegations against him" which is untrue.

82.    Plaintiff appealed this decision, as valuable information was withheld from the Title IX investigation, to include specifically but not limited to, Plaintiff's individual facts stated within the bullying and toxic environment complaints.

83.    However, the appeal did not lead to any corrective action regarding the flawed investigation, nor did it address the ongoing issues stemming from it.

84.    Since Parker's removal from coaching at SWHS, the track and cross-county program has fallen into disarray. The position of track and cross-country coach has been replaced at least three times. Parker's actions, coupled with the Defendant's failure to effectively discipline, have created an untenable working environment. Parker persists in influencing middle and high school athletes to disobey the current track coach and the rules in place. In 2024, Phillip Guidry, a track coach with a successful track record in New Orleans, to include four-time state championship, filed a complaint alleging hostile work environment and breach of contract. He submitted his resignation effective March 1, 2024.

85.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fees under the laws referenced above.

## COUNT I
## GENDER DISCRIMINATION
### Violation of Florida Educational Equity Act

86.     Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

87.     This is an action against Defendant for gender discrimination brought pursuant to the Florida Educational Equity Act codified at §1000.05, Florida Statutes, and the Florida Civil Rights Act codified at Chapter 760, Florida Statutes.

88.     Defendant is a member of the Florida K-20 public education system.

89.     While the Florida Educational Equity Act only provides Plaintiff equitable relief, it is a Florida statute that makes discrimination in education on the basis of gender unlawful. It is therefore incorporated within the Florida Civil Rights Act at §760.07, Florida Statutes.

90.     Plaintiff is therefore entitled to affirmative relief from the effects of Defendant's practice and compensatory damages for mental anguish, loss of dignity, and any other intangible injuries as well as attorney's fees and costs.

91.     Plaintiff has been the victim of discrimination on the basis of her gender by Defendant. Plaintiff attempted to participate in or receive the benefits of one or more of Defendant's Public K-20 education programs or activities. During the course of Plaintiff's enrollment with Defendant, she was treated differently than similarly situated male students in that she was excluded from participation in, denied the benefits of, or was subjected to discrimination by Defendant on the basis of her gender.

92.     Defendant is liable for the differential treatment, based on the gender based horrific treatment of Plaintiff and other female athletes, which adversely affected the terms and conditions of Plaintiff's enrollment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of

these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

93.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were gender based and in violation of the laws set forth herein.

94.    The discrimination complained of herein affected Plaintiff's ability to participate in, receive benefits of, and be free from discrimination in Plaintiff's continued enrollment with Defendant.

95.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful practices based upon gender under the laws enumerated herein.

96.    The above-described disability discrimination is in violation of the Florida Education Equity Act, §1000.05, Florida Statutes; and as such, Plaintiff is entitled to compensatory and punitive damages under this count. Section 760.07, Florida Statutes, states that "any violation of any Florida Statute that makes unlawful discrimination because of race, color, religion, gender, pregnancy, national origin, age, handicap, or marital status in the areas of education, employment, or public accommodations gives rise to a cause of action for all relief and damages described in § 760.11(5), Florida Statutes, [which provides in pertinent part that compensatory and punitive damages are available for any civil action brought under § 760.11(5). F.S.] unless greater damages are expressly provided for."

97.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, inconvenience, bodily injury, past and future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief, as well as compensatory and damages.

## COUNT II
## RETALIATION
### Violation of Florida Educational Equity Act

98.    Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

99.    This is an action against Defendant for retaliation after Plaintiff and her parents reported discrimination pursuant to the Florida Educational Equity Act codified at §1000.05, Florida Statutes, and the Florida Civil Rights Act codified at Chapter 760, Florida Statutes.

100.    Plaintiff and her parents reported gender/sex discrimination involving Parker.

101.    Thereafter, Plaintiff was the victim of retaliation as set forth at least in part above.

102.    There is a causal connection between Plaintiff's reports of discrimination and the actions taken against her thereafter. Defendant utterly failed in its duty to ensure that Plaintiff was protected from retaliation.

103.    The above-described retaliation is in violation of the Florida Education Equity Act, §1000.05, Florida Statutes; and as such, Plaintiff is entitled to compensatory and punitive damages under this count. Section 760.07, Florida Statutes, states that "any violation of any Florida Statute that makes unlawful discrimination because of race, color, religion, gender, pregnancy, national origin, age, handicap, or marital status in the areas of education, employment, or public accommodations gives rise to a cause of action for all relief and damages described in § 760.11(5), Florida Statutes, [which provides in pertinent part that compensatory and punitive damages are available for any civil action brought under § 760.11(5). F.S.] unless greater damages are expressly provided for."

104.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, inconvenience, bodily injury, past and future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses,

and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief, as well as compensatory and damages.

## COUNT III
## VIOLATION OF TITLE IX, 20 U.S.C. §§1681, et seq.

105. Plaintiff hereby incorporate by reference paragraph 1 through 85 as if fully set forth herein.

106. At all relevant times, the educational programs and/or activities within Defendant received federal financial assistance.

107. Plaintiff had a right not to be subjected to sexual discrimination, harassment, or abuse while she participated in the educational programs and activities offered within Defendant.

108. The sexual harassment of Plaintiff by Parker was sexual discrimination prohibited by Title IX, 20 U.S.C. §§1681, et seq.

109. Reports of the sexual discrimination were received by persons who had authority to take corrective action that could have ended the discrimination but they failed to do so. Defendant's representative, Parker, had the authority to take the actions against Plaintiff that he took against Plaintiff and other females with the knowledge and approval, tacit or otherwise, of Defendant.

110. Defendant should also have had actual notice of the violation of Plaintiff's rights as a result of prior complaints and/or documentation in Parker's employment file concerning his inappropriate actions with female students and/or athletes.

111. Defendant had the authority to address the acts of abuse by Parker and institute protective measures, including, but not limited to, prohibiting Parker from being in contact with female students and/or athletes enrolled by Defendant but failed to take any action.

112.    The decision of Defendant to retain Parker as a faculty member and work close or near to Plaintiff and to permit his continued contact with young students and employees, were official decisions to ignore the sexual harassment of Plaintiff and other victims.

113.    Defendant's inaction amounts to indifference to Plaintiff's right to be free from sexual discrimination, harassment, or abuse while she participated in the educational programs and activities available to students with Defendant.

114.    As a result of the deliberate indifference, Plaintiff suffered severe emotional distress due to the constant harassment, cyber bullying and bullying in person, which caused depression, fear, and anxiety.

115.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## VIOLATION OF TITLE IX, 20 U.S.C. §§1681, et seq- RETALIATION

116.    Plaintiff hereby incorporate by reference paragraph 1 through 85 as if fully set forth herein.

117.    This is an action against Defendant for retaliation after Plaintiff and her parents reported discrimination under Title IX.

118.    At all relevant times, the educational programs and/or activities within Defendant received federal financial assistance.

119.     Plaintiff had a right not to be subjected to sexual discrimination, harassment, or abuse while she participated in the educational programs and activities offered within Defendant.

120.     The sexual harassment of Plaintiff by Parker was sexual discrimination prohibited by Title IX, 20 U.S.C. §§1681, et seq.

121.     Reports of the sexual discrimination were received by persons who had authority to take corrective action that could have ended the discrimination but they failed to do so. Defendant's representative, Parker, had the authority to take the actions against Plaintiff that he took against Plaintiff and other females with the knowledge and approval, tacit or otherwise, of Defendant.

122.     Plaintiff and her parents reported gender/sex discrimination involving Parker.

123.     Thereafter, Plaintiff was the victim of retaliation as set forth at least in part above.

124.     There is a causal connection between Plaintiff's reports of discrimination and the actions taken against her thereafter. Defendant utterly failed in its duty to ensure that Plaintiff was protected from retaliation.

125.     The above-described retaliation is in violation of Title IX.

126.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, inconvenience, bodily injury, past and future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief, as well as compensatory and damages.

### COUNT V
### COMMON LAW NEGLIGENCE

127.     Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

128. This count sets forth a claim against Defendant for common law negligence. Defendant knew or should have known that at the time of the abovementioned acts, Plaintiff, was within a zone of risk related to contact with its agents/employees.

129. Defendant owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant and/or Defendant had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

130. Defendant further breached its duty to properly supervise its employee and agents, to include Parker, to ensure the safety of the Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity.

131. The actions of Defendant and as complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

132. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, inconvenience, bodily injury, past and future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief, as well as compensatory and damages.

## COUNT VI
## NEGLIGENT HIRING

133. Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

134. This count sets forth claims against Defendant for negligent hiring of Parker.

135. Prior to hiring Parker, Defendant knew or should have known that he was not fit for the position held with Defendant working with student athletes. There were prior

transgressions at other employers and prior to the incidents with Plaintiff that Defendant knew or should have known about that should have resulted in Defendant not hiring Parker. A proper vetting of Parker would have revealed these prior incidents.

136. For purposes of this count, at all pertinent times, some or all of Defendant's employees and agents were acting within the course and scope of their employment.

137. The actions of Defendant complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

138. The duties of care owed by Defendant to Plaintiff included duties to ensure that employees working with Defendant's students were properly hired, which duty was breached in this instance. Plaintiff was in foreseeable zones of risk, and these duties of care arose.

139. Defendant breached its duties of care to Plaintiff by negligently hiring Parker.

140. As a direct and proximate result of the unlawful acts and omissions of Defendant set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT VII
## NEGLIGENT SUPERVISION

141. Paragraphs 1 through 85 are re-alleged and incorporated herein by reference. This Count is pled in the alternative.

142. This count sets forth a claim against Defendant for negligent supervision.

143.    Defendant knew or should have known that at the time of the abovementioned acts, Plaintiff was within a zone of risk related to contact with its agents/employees.

144.    Defendant breached its duty to properly supervise Parker and other officers, employees, and agents. To wit, Parker was retained notwithstanding Defendant's knowledge of complaints at other schools within the county and being involved in proceedings concerning complaints by children against him.

145.    Then, at the schools in which Plaintiff was enrolled, Defendant was put on notice of multiple transgressions, abuse and bullying to students by Parker but still it failed to step in and properly supervisor Parker.

146.    The breach of this duty to properly supervise Parker and other employees and agents resulted in damages and injury to Plaintiff.

147.    Defendant knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents could cause injury to Plaintiff.

148.    Defendant breached its duties supervise its employees and agents while on duty and take appropriate disciplinary actions against said employees and agents.

149.    As a direct and proximate result of the unlawful acts and omissions of Defendant set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## COUNT VIII
## NEGLIGENT RETENTION

150.     Paragraphs 1 through 85 are re-alleged and incorporated herein by reference. This Count is pled in the alternative.

151.     This count sets forth a claim against Defendant for negligent retention.

152.     Defendant knew or should have known that at the time of the abovementioned acts, Plaintiff was within a zone of risk related to contact with its agents/employees.

153.     Defendant breached its duty to properly discipline Parker and other officers, employees, and agents. Defendant negligently kept Parker on staff, failing to administer discipline up to and including termination where it was warranted and Plaintiff was in the foreseeable zone of risk attached thereto.

154.     Defendant's lack of a policy or lack of proper implementation thereof regarding employee's behavior and appropriate disciplinary actions therefore allowed Parker to retain employment even after the conduct described more fully above

155.     The breach of this duty to properly discipline/terminate Parker and other officers, employees and agents resulted in damages and injury to Plaintiff.

156.     Defendant knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents when left unchecked, could cause injury to Plaintiff Knowlton.

157.     As a direct and proximate result of the unlawful acts and omissions of Defendant set forth in part above, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and are likely to continue into the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 6th day of September 2024.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF